## 54285. MARSHALL et al. v. THE STATE.

BIRDSONG, Judge.

The appellant Marshall was convicted by a jury for violating the Georgia Controlled Substances Act by possessing with intent to distribute 25 pounds of marijuana. He was sentenced to serve two years.

The facts show that one Mercer was a personal acquaintance of the appellant Marshall, their friendship relating back to days together in the army. (Mercer was also a paid informer for the Georgia Drug Enforcement Agency.) Marshall was discharged from the army in June, 1976. In September, Mercer telephoned Marshall and asked for drugs. Marshall indicated he had none and could not help Mercer. Nevertheless, a few days later Marshall was in North Carolina and encountered a mutual friend (of Marshall and Mercer). This friend offered to furnish drugs for $250. Marshall, without further contacting Mercer, took the alleged drug and brought it back to Jacksonville, Florida, where Marshall was residing, leaving it in the trunk of his car. Fortuitously, Mercer

called again in a couple of days and Marshall related that he had a bag of drugs which would cost Mercer $250. Mercer made arrangements for Marshall to take the package to a man in Tifton, Georgia, where the package would be accepted on behalf of Mercer and the payment of $250 made. The trip was made and the exchange accomplished with Marshall mailing the money back to the seller in North Carolina.

Marshall did not hear from Mercer again until Christmas day of 1976. On that day, Mercer called and urged Marshall to obtain some more drugs for him. Marshall indicated he did not know where he could obtain drugs and refused to help Mercer. Mercer called again on the next day. Mercer argued that Jacksonville was a larger city, and drugs would be easily obtainable and that he needed the drugs for resale. Mercer stated he was in desperate need for cash. Marshall again denied knowing how to help Mercer and refused to assist him in any way. On the next day, Mercer made a third call begging for drugs, this time invoking the persuasion of friendship. Once more, Marshall refused.

That same evening, December 27, 1976, Marshall was invited to a party in the same apartment building in which Marshall resided. While at the party, the hostess introduced Marshall to a guest named Smith. During a casual conversation, Smith mentioned he had 25 pounds of marijuana he wanted to sell and wondered if Marshall knew of any interested buyers. Marshall mentioned Mercer, whereupon Smith suggested that they contact Mercer and see if he was still interested and if they could make a deal. Marshall went back to his apartment, changed clothes, and proceeded to Smith's apartment, a short drive away. There, Mercer was contacted by telephone and arrangements made to sell the 25 pounds of marijuana as well as 1,000 "hits" of "speed." Mercer arranged to have Marshall and Smith drive to Tifton the next day, December 28, 1976, to conclude the transaction. The purchase price was to be $6,000.

On the morning of December 28, Marshall went to Smith's apartment. From there, with Smith driving, the two men proceeded to Tifton to the same motel where Marshall had rendezvoused in September. They arrived

at the motel before Mercer and the undercover agents to whom the sale was ultimately to be made. Mercer, upon arriving, notified Smith that he would have to move his vehicle next to the purchaser's car, apparently to insure privacy. While Smith was moving his car to the new parking space, Marshall entered the undercover agent's car. The agent testified that Marshall discussed what drugs were supposed to be sold, confirmed that there was about 30 pounds of marijuana and 1,000 hits of speed, and that the cost would be $6,000. Marshall also said that the drugs were in the trunk of Smith's vehicle. After getting out of the car to examine the drugs, the agent indicated that Smith stated that he would like to see some money before showing the drugs. The conversation was in the immediate presence of Marshall. As soon as the drugs were identified, Smith and Marshall were apprehended.

Marshall enumerates eight alleged errors; however, these may be consolidated and treated as raising only four. *Held:*

1. In his first two enumerations of error, Marshall complains that he was entrapped by Mercer's importuning in that he (Marshall) would have had no reason or opportunity to be involved with drugs had it not been for Mercer. Mercer was not called as a witness, and Marshall urges that the trial judge erred in refusing to grant a motion for a directed verdict of acquittal in the absence of disputatious evidence offered by the state. See *Hall v. State,* 136 Ga. App. 622 (222 SE2d 140) (1975). He further argues that the charge of the court did not properly inform the jury as requested that it would have to find that the government had affirmatively disproved the fact of entrapment. *Reed v. State,* 130 Ga. App. 659, 662 (2) (204 SE2d 335) (1974).

We must examine the evidence to determine if the issue of entrapment was raised as a matter of law. We first note that this is not a case where a government agent furnished money to purchase drugs nor did the government furnish drugs to be sold. Rather the evidence shows that after repeated requests by a government informer, the appellant voluntarily went to a third person and obtained drugs. The general rule is that repeated requests by government informers does not raise the issue

of entrapment. See *Garrett v. State,* 133 Ga. App. 564 (211 SE2d 584) (1974); *Brooks v. State,* 125 Ga. App. 867 (189 SE2d 448) (1972); *Allen v. State,* 120 Ga. App. 533 (171 SE2d 380) (1969). The more basic question presented was: when Marshall phoned Mercer to inform him of the availability of the 25 pounds of marijuana, was Marshall acting as an agent for Smith, or, instead, induced into committing the crime of distributing marijuana solely because of the importuning of Mercer, in the absence of which he would not have committed the offense?

We are satisfied that a question of fact was presented for determination by the jury, and that entrapment, as an unrebutted matter of fact and law, was not raised. The evidence raised an issue of acting in concert with and as an accomplice of Smith. The trial court clearly and correctly charged the jury on the issue of aiding and abetting the commission of a crime as well as expositing the law of entrapment, properly placing the burden of excluding the issue of entrapment upon the state. The jury rejected the issue of enticement and accepted the theory of aiding and abetting, resulting in Marshall's conviction. The evidence did not demand a verdict in the defendant's favor and was amply sufficient to support the jury's conviction. *Huskey v. State,* 139 Ga. App. 752 (229 SE2d 547) (1976). See *Jones v. State,* 141 Ga. App. 17, 18 (232 SE2d 365) (1977); *Taylor v. State,* 128 Ga. App. 13 (195 SE2d 294) (1974).

The facts of this case distinguish it from *Hall v. State,* 136 Ga. App. 622, supra, and *Harpe v. State,* 134 Ga. App. 493 (214 SE2d 738) (1975). It is true that where a defendant raises, as a matter of law, an *unrebutted* defense of entrapment, the state has the burden of presenting conflicting, rebuttal evidence showing beyond a reasonable doubt the absence of entrapment. This it may do by calling the informer or other agent who allegedly entrapped the defendant and thereby contradict the defendant's testimony. The failure to call the rebuttal witness results in reversible error. *Hall v. State,* supra. In this case, the testimony of the defendant himself presented the conflicting evidence and rebutted the issue. Marshall's testimony raised a substantial issue of aiding and abetting the seller as well as a possible issue of

entrapment. This created a bona fide issue of fact for resolution by the jury, but did not require the state, sua sponte, to call the informer to present additional evidence to reinforce the absence of entrapment. We conclude that it was not necessary for the state to present rebuttal testimony by the informer. It follows also that the trial court did not err in denying the motion for a directed verdict, there being an issue of fact relating to entrapment. Nor did the court err in failing to charge the law of entrapment in the language of the requested charge where the charge was in the language of the statute and correctly informed the jury that the state had the burden of excluding the defense of entrapment. *Pollard v. State,* 236 Ga. 587, 589 (224 SE2d 420) (1976); *Leutner v. State,* 235 Ga. 77, 81 (218 SE2d 820) (1975).

2. In Enumerations 3, 4 and 5, Marshall complains that the trial court erroneously allowed into evidence testimony relating to changes in his appearance from the time of the transaction until the time of trial. Appellant asserts this evidence was immaterial inasmuch as he did not contest identity or the sale. It is equally obvious that the evidence did in fact tend to establish identity. Even if the evidence was unnecessary and therefore immaterial, the appellant has shown no possible injury. It is an old and sound rule that error, to be reversible, must be harmful. *Burger Chef Systems, Inc. v. Newton,* 126 Ga. App. 636, 639 (191 SE2d 479) (1972); *First Nat. Bank of Chattanooga v. American Sugar Refining Co.,* 120 Ga. 717 (48 SE 326) (1904). Admission of evidence which is wholly immaterial generally will not be cause for the grant of a new trial; it will be grounds for a new trial only if it appears of sufficient consequence to injuriously affect the complaining party. *Dismuke v. State,* 142 Ga. App. 381, 382 (236 SE2d 12) (1977). These enumerations are without merit.

3. In Enumerations 6 and 7, Marshall urges that the trial court erred in allowing evidence of the drug transaction back in September on the grounds that it constituted uncharged misconduct and unlawfully placed his character into evidence. The evidence was properly allowed as tending to prove motive, intent, state of mind, and was directly pertinent to the question of entrapment.

*Smith v. State,* 142 Ga. App. 1, 3 (234 SE2d 816) (1977) and cits. These enumerations are without merit.

4. In the last enumeration of error, appellant avers that the evidence does not support the verdict. As indicated hereinabove, appellant admitted the commission of the offense but unsuccessfully relied upon the defense of entrapment. In view of his admission of the commission of the offense, the evidence more than adequately supports the verdict of guilty. The other facets of Marshall's argument have been rejected in the earlier divisions of this opinion. This enumeration likewise is without merit.

*Judgment affirmed. Deen, P. J., and Webb, J., concur.*

SUBMITTED JULY 7, 1977 — DECIDED SEPTEMBER 9, 1977.

*Allen & Kelley, Roy Benton Allen, Jr.,* for appellants. *Thomas H. Pittman, District Attorney, Fred W. Rigdon, Jr., Assistant District Attorney,* for appellee.