## S91G0189. HILL v. THE STATE.
(405 SE2d 258)

SMITH, Presiding Justice.

We granted a writ of certiorari to the Court of Appeals in *Hill v. State,* 197 Ga. App. 260 (398 SE2d 226) (1990) and informed the parties that we were particularly concerned with: "The opinion of the Court of Appeals in this case, in light of this Court's opinion in *Emanuel v. State,* 260 Ga. 425 (396 SE2d 225) (1990), [reversing 195 Ga. App. 302 (393 SE2d 74) (1990)]." The trial court denied the appellant's motion for a directed verdict of acquittal; the Court of Appeals affirmed, and we reverse.

This Court, in *Keaton v. State,* 253 Ga. 70, 72 (316 SE2d 452) (1984), set out the three distinct elements that embody the entrapment defense:

> (1) the idea for the commission of the crime must originate with the state agent; (2) the crime must be induced by the agent's undue persuasion, incitement, or deceit; and (3) the defendant must not be predisposed to commit the crime. OCGA § 16-3-25 (enacted in 1968).

After a defendant presents a prima facie case of entrapment, the burden is on the state to disprove entrapment beyond a reasonable doubt. That determination generally rests with the jury; however, where there is no conflict in the evidence, and all the evidence prior to the entrapment that is introduced, with all reasonable deductions and inferences, demands a verdict of acquittal, the trial judge must direct a verdict of acquittal. *State v. Royal,* 247 Ga. 309, 310 (275 SE2d 646) (1981) (reversing *Royal v. State,* 155 Ga. App. 691 (272 SE2d 556) (1980)). The government's burden is far greater than merely impeaching the accused, it "must go further and contradict this witness' testimony as to the affirmative defense. [Cits.]" *Coleman v. State,* 141 Ga. App. 193, 194 (233 SE2d 42) (1977).

If the "creative activity," *Sherman v. United States,* 356 U. S. 369, 372 (78 SC 819, 2 LE2d 848) (1958), of the law-enforcement official generates criminal acts that are "not independent acts subsequent to the inducement but part of a course of conduct which was the product of the inducement," id. at 374, those criminal acts cannot be used to show predisposition. If those acts could be used to show predisposition, the entrapment defense would be worthless.

The appellant's testimony, corroborated by the paid informant,

established a prima facie case of entrapment. There was no evidence that prior to the appellant's entrapment he had a predisposition to deliver, sell, distribute, or knowingly possess cocaine as forbidden by OCGA § 16-13-30 (b). There was no testimony that conflicted with the appellant's and the paid informant's testimony regarding the circumstances surrounding the informant's solicitations. *Robinson v. State*, 145 Ga. App. 17 (243 SE2d 257) (1978). The state attempted to rebut the appellant's prima facie case with officer Wade's testimony; however, his testimony was not sufficient to meet the state's burden of proving that the appellant "was ready and willing without persuasion and awaiting a propitious opportunity to commit the crime. *State v. McNeill*, 234 Ga. 696 (217 SE2d 281) (1975)." *Griffin v. State*, 154 Ga. App. 261, 264 (267 SE2d 867) (1980); *Sherman v. United States*, supra, 356 U. S. at 374.

The state failed to introduce evidence to rebut the appellant's affirmative defense of entrapment; therefore, the appellant was entitled to a directed verdict of acquittal. *McQueen v. State*, 185 Ga. App. 485 (364 SE2d 617) (1988); *Emanuel v. State*, 260 Ga. 425 (396 SE2d 225) (1990); Kurtz Criminal Law.

*Judgment reversed. All the Justices concur, except Weltner, Hunt, and Fletcher, JJ., who dissent.*

HUNT, Justice, dissenting.

I disagree with the majority that the state can never satisfy its burden of disproving the defendant's prima facie case of entrapment by impeaching the defendant, but is required to go further and to contradict the defendant's testimony. Clearly, there are instances in which the defendant's testimony may be impeached to the extent that the jury would be authorized to disbelieve it entirely, in which event no further evidence by the state would be necessary in order to prevail against a claim of entrapment. Nonetheless, in this case, the state did present other evidence, set out at length in the Court of Appeals' opinion, contradicting the defendant's testimony. I agree with Judge Beasley's opinion, concurred in by Judge Deen and Judge Pope, that this evidence was sufficient to authorize the trial court to submit the issue of entrapment to the jury and, therefore, I respectfully dissent.

The reversal of this case based upon the majority's determination that the evidence of entrapment was insufficient confirms beyond doubt that certiorari was improvidently granted. Georgia Supreme Court Rule 30 (1). As pointed out by Justice Hall in *Atlanta Coca-Cola Bottling v. Jones*, 236 Ga. 448, 451 (224 SE2d 25) (1976) (Justice Hall, dissenting), there has never been any disagreement among the trial court, Court of Appeals, this court, or the parties in litigation over any principle of law in this case, and the only purpose for this court's review is to consider whether the Court of Appeals properly

construed the facts.

Review by certiorari "should be basically for the benefit of the public, to reconcile different holdings of the panel court and to declare the law on matters of gravity and public policy." Id. at 453. The routine grant of certiorari in evidentiary cases provides, in effect, a double appeal, which is undesirable for a number of reasons and should be avoided.[1]

I am authorized to state that Justice Weltner joins this dissent.

FLETCHER, Justice, dissenting.

As did Justice Hunt, I agree with Judge Beasley's opinion that the evidence was sufficient to authorize the trial court to submit the issue of entrapment to the jury. For this reason, I dissent.

DECIDED JUNE 27, 1991.

The Garland Firm, Edward T. M. Garland, Donald F. Samuel, for appellant.

Thomas J. Charron, District Attorney, W. Thomas Weathers III, Debra H. Bernes, Assistant District Attorneys, for appellee.

---

[1] Nowhere is this more apparent than in the grant of certiorari in "excessive verdict" cases. All too frequently this court has, by a 4-3 vote, reversed a split decision of the Court of Appeals on the issue of excessiveness, a result leading essentially nowhere.

> Public confidence in the courts is undermined by the spectacle of one appellate court reversing another, particularly when such reversals are by a divided court and the final decision may represent the opinion of [less than a majority] of the judges who passed upon the case.

Id. at 454.