### A10A1236. JACKSON v. THE STATE.
(699 SE2d 884)

MCMURRAY, Senior Appellate Judge.

A jury found Melvin Lee Jackson guilty of sale of cocaine, and the trial court denied his motion for new trial. On appeal, Jackson contends that the trial court erred in denying his motion for a directed verdict of acquittal because the confidential informant involved in the drug deal entrapped him as a matter of law. We disagree and affirm.

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. We view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.

(Citation omitted.) *Valentine v. State*, 301 Ga. App. 630, 630-631 (689 SE2d 76) (2009). See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Construed in favor of the verdict, the evidence shows that investigators with the City of Newnan Police Department were

involved in an ongoing undercover drug operation that targeted suspected cocaine dealers. As part of the operation, the investigators engaged a confidential informant to make controlled buys of cocaine. Prior to each controlled buy, an investigator searched the informant to make sure he had no contraband on his person, wired him with a hidden audio and video surveillance device, provided him with money to make the drug purchase, and instructed him to go to a predetermined location to purchase the drugs. The informant was paid for carrying out each drug buy.

One of the suspected cocaine dealers targeted in the investigation was Jeffery Rhoades, but he was unwilling to sell cocaine directly to the informant. The informant spoke with Jackson, whom the informant had known for approximately one year, and Jackson agreed to act as an intermediary. The controlled buy occurred a few days later on the evening of January 27, 2009.

The investigators and informant followed their normal procedure prior to the controlled buy. The informant was wired with the hidden surveillance device and provided with cash to purchase the cocaine. The informant then met Jackson in the yard of the informant's home, and Jackson called Rhoades and arranged for the cocaine purchase to occur at a nearby gasoline station. Jackson and the informant walked to the gasoline station and waited for Rhoades.

Rhoades and his girlfriend drove into the station. Upon seeing Jackson and the informant, Rhoades exited from his vehicle, told Jackson that the cocaine was on the front seat, and went inside the convenience store. While Rhoades was in the store, Jackson retrieved the cocaine from the front seat and showed it to the informant. Following a discussion over price and quantity, the informant gave Jackson the cash, and Jackson gave the informant the cocaine. During the transaction, Rhoades returned to his vehicle and spoke briefly with Jackson, who handed Rhoades the cash. The informant and Jackson then left the station and walked back to the informant's house, where they parted ways. The informant subsequently met the investigators at a predetermined location and gave them the cocaine and the surveillance equipment.

Jackson was arrested and indicted on one count of sale of cocaine along with Rhoades and his girlfriend. At trial, one of the investigators, the informant, Rhoades, and his girlfriend testified on behalf of the state. The state also played for the jury the recording from the audio and video surveillance device worn by the informant. Jackson did not testify or present any witnesses. After hearing all of the evidence, the jury convicted Jackson of the charged offense. The trial court denied Jackson's motion for new trial, and this appeal followed.

"Entrapment consists of three distinct elements: (1) the idea for

the commission of the crime must originate with the state agent; (2) the crime must be induced by the agent's undue persuasion, incitement, or deceit; and (3) the defendant must not be predisposed to commit the crime." (Punctuation and footnote omitted.) *Flores v. State*, 277 Ga. App. 211, 214 (4) (626 SE2d 181) (2006). See OCGA § 16-3-25.[1] If the defendant establishes a prima facie case of entrapment, the burden is then upon the state to disprove entrapment beyond a reasonable doubt. *Evans v. State*, 209 Ga. App. 340, 340 (1) (433 SE2d 426) (1993). The determination of whether the defendant was entrapped is for the jury unless the uncontroverted evidence demands a finding of entrapment. Id. at 340-341 (1).

A defendant's conduct leading up to and during a drug sale can show that he was a willing participant who was predisposed to commit the crime. See *Chandler v. State*, 294 Ga. App. 27, 29 (1) (668 SE2d 510) (2008); *Urapo-Sanchez v. State*, 267 Ga. App. 113, 116 (1) (598 SE2d 850) (2004). Furthermore, the fact that a defendant procures contraband after a request or even repeated requests by a state agent, without more, is insufficient to prove entrapment. See *Bell v. State*, 208 Ga. App. 337, 339 (4) (430 SE2d 777) (1993); *Gooch v. State*, 188 Ga. App. 196, 197 (372 SE2d 473) (1988); *Roden v. State*, 181 Ga. App. 287, 291 (1) (351 SE2d 713) (1986). "Absent other circumstances, it is generally held that where an [informant] simply makes a request, as to purchase contraband, and there is ready compliance, the defense of entrapment is not available." (Punctuation and footnote omitted.) *Flores*, 277 Ga. App. at 214 (4).

Mindful of these principles, we conclude that the trial court did not err by denying Jackson's motion for a directed verdict of acquittal. We question whether Jackson established a prima facie case of entrapment, but to the extent that he did so, the jury was authorized to find that the state's evidence rebutted it beyond a reasonable doubt. In this respect, while there was evidence that the idea for the drug transaction originated with the informant, the state's evidence rebutted any claims by Jackson that he was induced by undue persuasion and that he was not predisposed to commit the crime. The uncontroverted testimony of the informant and the surveillance recording show that Jackson had the previously estab-

---

[1] OCGA § 16-3-25 provides:

A person is not guilty of a crime if, by entrapment, his conduct is induced or solicited by a government officer or employee, or agent of either, for the purpose of obtaining evidence to be used in prosecuting the person for commission of the crime. Entrapment exists where the idea and intention of the commission of the crime originated with a government officer or employee, or with an agent of either, and he, by undue persuasion, incitement, or deceitful means, induced the accused to commit the act which the accused would not have committed except for the conduct of such officer.

lished ability to purchase cocaine from Rhoades and that he willingly participated in the drug deal. Because "there is no entrapment where the [informant] merely furnishes an opportunity to a defendant who is ready to commit the offense," the trial court properly concluded that the evidence did not demand a finding of entrapment and that the issue was for the jury's resolution. (Citation and punctuation omitted.) *Evans*, 209 Ga. App. at 341 (1). See *Thurmond v. State*, 161 Ga. App. 602, 602-603 (1) (288 SE2d 780) (1982) (evidence did not demand a finding of entrapment, where there was evidence that the informant willingly served as an intermediary between the undercover agent posing as the purchaser of a controlled substance and the drug dealer).

In reaching this result, we note that Jackson's reliance on *Hill v. State*, 261 Ga. 377 (405 SE2d 258) (1991), is misplaced. Jackson argues that *Hill* stands for the proposition that his course of conduct could not be used by the state to disprove his entrapment defense. His argument lacks merit. Our Supreme Court in *Hill* stated that

> [i]f the creative activity of the law-enforcement official generates criminal acts that are not independent acts subsequent to the inducement but part of a course of conduct which was the product of the inducement, those criminal acts cannot be used to show predisposition.

(Citations and punctuation omitted.) Id. In the present case, however, there was evidence that Jackson's involvement in the cocaine sale was the "independent act" of a willing participant rather than part of a course of conduct resulting from improper inducement by the informant. Thus, *Hill* is inapposite and does not alter the result in this case. See *Wilcox v. State*, 229 Ga. App. 227, 231 (1) (493 SE2d 724) (1997).

*Judgment affirmed. Barnes, P. J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED AUGUST 18, 2010.

*Jamie T. Roberts*, for appellant.
*Peter J. Skandalakis, District Attorney, Raymond C. Mayer, Assistant District Attorney*, for appellee.